RENDERED:  JULY 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1086-ME

H.Z.T.S.                                                                            APPELLANT


|  | APPEAL FROM BOONE FAMILY COURT |
| v. | HONORABLE KENDRA L. MCCARDLE, JUDGE |
|  | ACTION NO. 23-AD-00066 |


T.A.G.; B.J.L., A MINOR CHILD;
AND K.J.G.                                                                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, A. JONES, AND L. JONES, JUDGES.

CETRULO, JUDGE:  Appellant, H.Z.T.S. ("Birth Father"), is the biological father

of B.J.L. ("Child").  Birth Father appeals from the Boone County Family Court's

findings of fact and conclusions of law and judgment terminating his parental

rights and granting a stepparent adoption without his consent.  On appeal, Birth

Father:  (1) argues the family court erred by not recusing from the matter; (2)

challenges the constitutionality of KRS[1] 199.502; and (3) claims the family court's decision was not supported by clear and convincing evidence. Having reviewed the record and briefs before this Court, we affirm the Boone County Family Court decision.

## BACKGROUND

K.J.G. ("Birth Mother") and Birth Father knew each other since middle school. They began dating in high school and were together for three years. In 2017, Birth Mother became pregnant with Child, who was born in April 2018. Birth Mother and Birth Father never married, and but for the pregnancy, their relationship substantially ended in November 2017.

During the months leading up to and following the breakup, Birth Mother became increasingly concerned over what appeared to be an escalation in some of Birth Father's troublesome behaviors, and in May 2018, Birth Mother obtained an Interpersonal Protective Order ("IPO") against him. Nevertheless, Birth Mother permitted Birth Father supervised visitation with Child, and her mother (Child's maternal grandmother) agreed to supervise the visits at her home. These visits were scheduled to take place either on a Saturday or Sunday and to last for a couple of hours. However, Mother asserted Birth Father frequently

---

[1] Kentucky Revised Statute.

missed his scheduled visits, and when he did attend them, he arrived late; spent most of the time on his phone; and barely engaged with Child. For the first few years of Child's life, Birth Father never sought to assert his visitation nor custodial rights.

In terms of financial support, Birth Father gave some money to Birth Mother for a week or two following Child's birth. Birth Mother did not seek to establish a formal child support order; instead, she requested assistance with providing basic necessities, including diapers, wipes, and formula. This informal arrangement was likewise short lived, lasting only a few weeks.

In January 2020, Birth Mother stopped all visitation after she learned of Birth Father's arrest based on an allegation of abusing the minor child of his then-girlfriend.[2] Following his arrest, the Kenton County grand jury indicted Birth Father for criminal abuse in the first degree in June 2020. He eventually pleaded guilty to the reduced charge of criminal abuse in the second degree, and in February 2021, the Kenton Circuit Court sentenced Birth Father to five years of imprisonment.

Birth Father served 18 months in custody, and in 2023, after his release, he filed an action to establish paternity seeking custody of Child in a

---

[2] The allegation was that Birth Father pulled the toddler's hair with such force that the scalp separated from the skull.

separate proceeding. The evidence was undisputed that Birth Father had not seen Child since April 2020, when Child was two years old.

In the meantime, Birth Mother married Appellee, T.A.G. ("Stepfather"), in November 2022. Birth Mother and Child began residing with Stepfather six months before their marriage, where Stepfather, along with Birth Mother, provided financial support for Child. In September 2023, Stepfather filed this action to adopt Child, to which Birth Mother consented. Birth Father did not respond to the petition until May 2024. In June 2024, the family court scheduled the matter for trial on September 12, 2024.

Both parties submitted pretrial memoranda. Less than 48 hours before the scheduled trial, Birth Father filed a motion to dismiss the action, or in the alternative, to continue trial, based on his argument that KRS 199.502 was unconstitutional. Counsel for Birth Father asserted in that motion that he served the Kentucky Attorney General with the filing. If the matter was not dismissed, counsel asked the family court to continue the trial scheduled for the following day to allow the constitutionality of KRS 199.502 to be addressed.

The family court declined to continue the trial. Stating that it would reserve on the newly raised constitutional challenge, the court offered additional time for both parties (as well as the Attorney General should he choose to do so) to brief the legal issue after the hearing.

At trial, which was conducted over several hours, the family court heard testimony from Birth Mother, Birth Father, and Stepfather, as well as parents of both biological parents and some other family members. It became apparent during the proceedings that a report from the Cabinet for Health and Family Services ("the Cabinet"), required under KRS 199.510(2), was not yet in the record. All parties agreed to proceed with the taking of evidence, and the family court made it clear that, if necessary, upon receipt of the Cabinet's report, it would hear additional evidence to address any information in the report. That report was not submitted until several months later. The Cabinet recommended that the adoption be granted.

Birth Father filed a motion to strike the Cabinet's report, but the parties agreed that there was no need for additional evidence. The family court allowed both parties additional time to submit proposed findings and conclusions of law, and in August 2025,[3] the court entered its own findings and conclusions and judgment terminating Birth Father's parental rights to Child and granting the adoption by Stepfather.

In its extensive ruling, the family court addressed several pretrial issues argued by Birth Father, which warrant discussion based on the issues raised

---

[3] This matter was further delayed by the unexpected death of counsel for Stepfather, Kim Vocke, in early 2025.

on appeal. Regarding Birth Father's argument that the court should have recused itself from the proceeding due to Stepfather's employment with the Boone County Sheriff's Office, the order stated the following:

> The Court notes from a review of the file that [Birth Father] sought recusal of the Boone Family Court from this action by way of an affidavit in the file, but never by motion properly brought before the Court. It additionally appears that he never certified this request to the Chief Justice of the Supreme Court. The Court can find no record that this affidavit was ever addressed, although – as it was never properly brought by motion – the Court would never have been prompted to do so. However, the Court will address it briefly inasmuch as it has reviewed the affidavit and finds no merit in the request. This Court has no reason to recuse from this case and notes that, if it were required to recuse from every case involving a county employee, the system of special judges would be critically overburdened. The Court has no personal knowledge or relationship with any of the parties in this case such that recusal would be required.

The family court also addressed Birth Father's motion to strike the Cabinet report as containing hearsay. However, as the court stated, Cabinet reports are required pursuant to KRS 199.510. The family court therefore denied the motion to strike but specifically stated that the statements in the report were not given any weight due to the report including hearsay.[4]

---

[4] Birth Father also includes in this appeal a brief argument that the family court erred by permitting the Cabinet report to be filed without an interview of him. We will not discuss this argument further as it is clear from the court's ruling that the hearsay statements were not considered by it, but focused instead on the testimony of the parties during the hearing. *See, e.g., D.G. v. A.B.*, No. 2025-CA-0536-ME, 2025 WL 2737121 (Ky. App. Sep. 26, 2025).

Thereafter, over several pages of detailed analysis, the family court addressed Birth Father's claim as to the constitutionality of KRS 199.502, despite the tardiness of the motion. For purposes of this appeal, we include only the court's summary:

> Having considered the parties' arguments and reviewed the pertinent statutory and caselaw, the Court finds that the Kentucky Supreme Court has already expressly held that KRS § 199.502 does not facially violate the substantive due process rights of natural parents. *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 363-64 (Ky. 2022); *See also W.F.B. v. Cabinet for Health & Fam. Servs.*, [No. 2023-CA-1013-ME, No. 2023-CA-1014-ME,] 2024 WL 3381402, at *2-3 (Ky. App. July 12, 2025) (recognizing the binding authority of *M.S.S.* and consequently refusing to address the constitutionality of KRS § 199.502).
>
> The same month that *M.S.S.* was decided in the Kentucky Supreme Court, the Court of Appeals rejected a constitutional challenge to the specific section of KRS § 199.502 that offends [Birth Father]. *M.N. v. A.A.*, [No. 2021-CA-1007-ME,] 2022 WL 258514, *5 (Ky. App. [Jan. 28,] 2022).

Finally, the family court addressed the three alleged grounds raised by Stepfather for granting adoption without Birth Father's consent. After detailing the testimony of all witnesses at the hearing, the family court found that there was clear and convincing evidence to support an adoption without parental consent and concluded that it was in Child's best interest to grant the petition. First, the court found that Birth Father abandoned Child for a period of no less than ninety days, citing KRS 199.502(1)(a). Second, the court held that Birth Father failed to

provide essential parental care and protection of Child, citing KRS 199.502(1)(e). Finally, the court found that Birth Father failed to provide essential food, clothing, shelter, medical care, or education to Child, citing KRS 199.502(1)(g).

This appeal followed.

## ANALYSIS

At the outset, we note Stepfather's request to strike the brief filed on behalf of Birth Father for failing to follow the Kentucky Rules of Appellate Procedure ("RAP"). Stepfather correctly points out deficiencies in the brief, not the least of which include failure to utilize redacted names for this confidential proceeding and inclusion of items in the appendix that were not part of the record below.[5] "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, [RAP 31(H)(1)]; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Jordan v. Boss*, 726 S.W.3d 663, 673 (Ky. App. 2025) (alterations in original) (quoting *Barnette v. Evans*, 697 S.W.3d 749, 755 (Ky. App. 2024)). Recognizing the importance of this proceeding, we decline to exercise our discretion to strike Birth Father's brief, and proceed to the merits.

---

[5] This Court specifically ordered that the record could not be supplemented and gave counsel for Birth Father additional time to complete the brief. Counsel's continued failure to comply with the rules of appellate procedure is again noted, and we caution counsel that future errors may not be considered with such lenience.

Even so, we conclude that at least two of those arguments are procedurally deficient in other ways.

### 1. Judicial Recusal

First, Birth Father asserts that the family court judge erred by denying his motion for recusal due to Stepfather's employment as a deputy with the Boone County Sheriff's Office. In *Abbott, Inc. v. Guirguis*, our Supreme Court revised the appellate standard for considering a trial court's recusal determination from abuse of discretion to *de novo* review. 626 S.W.3d 475, 484 (Ky. 2021) ("Because an objective standard is appropriate for measuring whether a judge's impartiality might reasonably be questioned from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances, we hold, appropriately, that this determination is to be reviewed on appeal on a *de novo* basis.").

The statutory basis for judicial disqualification is provided by KRS 26A.015. Subsection (2) of that statute requires recusal when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding[.]" KRS 26A.015(2)(a). The subsection also requires recusal "[w]here [a judge] has knowledge of any other circumstances in which his impartiality might reasonably be questioned." KRS 26A.015(2)(e). "The burden of proof required for recusal of a trial judge is an onerous one[,]" and

a "mere belief that a judge will not afford a fair and impartial trial is not sufficient grounds for recusal." *Stopher v. Commonwealth*, 57 S.W.3d 787, 794 (Ky. 2001) (citations omitted).

> The bar is set high purposely and by necessity, to prevent parties and attorneys from crassly using the motion as a tactic to dispense with Judges whose rulings they do not like. There must be a showing of facts "of a character calculated seriously to impair the judge's impartiality and sway his judgment."

*Jordan*, 726 S.W.3d at 674 (quoting *Stopher*, 57 S.W.3d at 794).

"[A] party or counsel may seek to disqualify or recuse a judge from proceeding further in a matter either by filing an affidavit pursuant to KRS 26A.020, by filing a motion with the judge pursuant to KRS 26A.015, or by filing both." *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 876 (Ky. App. 2007) (citing *Nichols v. Commonwealth*, 839 S.W.2d 263, 265 (Ky. 1992)). In this case, Birth Father opted to file an affidavit pursuant to KRS 26A.020. This process, as opposed to a trial court motion under KRS 26A.015, requires certification to the Chief Justice of the Kentucky Supreme Court. There is no indication in this record that this certification ever occurred nor that the Chief Justice was ever advised of any such filing in this case.[6]

---

[6] On appeal (and we note, in violation of this Court's order denying Birth Father's motion to supplement the record), Birth Father included two orders rendered by then Chief Justice VanMeter denying disqualification of this family court judge under KRS 26A.020. Those two orders were in response to Birth Father's similar (if not identical) affidavits for recusal filed in

Accordingly, it is by happenstance that this issue is even before us on appeal.[7] As mentioned, the family court was not presented with a properly filed motion at the trial court level to recuse herself. Still, in an abundance of caution, the court addressed the affidavit upon discovering it in the record. The family court specifically advised that it was not familiar with Stepfather and had no personal knowledge or relationship with any of the parties in the case to require recusal. The court further opined that recusal in every case involving some employee of the county would not be feasible.

On appeal, Birth Father still does not allege any claim suggesting that the family court had actual bias, prejudice, or personal knowledge regarding the case and its parties. Nevertheless, he maintains that the mere fact that the Boone County Sheriff's office provides courtroom security creates an appearance of impropriety requiring recusal. This assertion does not amount to evidence demonstrating that the impartiality of the family court was seriously impaired.

---

other cases involving the same parties. The Chief Justice found no basis for disqualification in either of those cases.

[7] *See Kenney*, 269 S.W.3d at 876 (citing *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. App. 1985)) (observing that the lack of a filed motion at the trial level deprives the trial court of an opportunity to rule and the appellate court of a possible error to review).

We find no sufficient evidence to compel recusal of this judge under KRS 26A.015. Utilizing an objective standard and *de novo* review, we find no error in the court's ruling and find no merit in the argument presented before us.

## 2. Constitutionality of KRS 199.502

Birth Father's second argument on appeal regarding the constitutionality of KRS 199.502 was raised below, although belatedly, to the family court. However, the provisions of KRS 418.075(2) require the Attorney General to be notified of any constitutional challenge to a statute *on appeal*:

> In any appeal to the Kentucky Court of Appeals . . . which involves the constitutional validity of a statute, the Attorney General shall, before the filing of the appellant's brief, be served with a copy of the pleading, paper, or other documents which initiate the appeal in the appellate forum. This notice shall specify the challenged statute and the nature of the alleged constitutional defect.

Birth Father's brief failed to specify how and when the Attorney General was notified of his *appellate* constitutional challenge. Stepfather pointed out that the notice of appeal did not indicate service of this challenge to the Attorney General. In his reply, Birth Father simply responded that he preserved this issue below by emailing the Attorney General's office on the day before trial.

In reviewing the record, we agree with Stepfather that the notice of appeal does not appear to have been served on the Attorney General. "KRS 418.075 requires that the Attorney General be notified in any appeal involving a

challenge to the constitutionality of a statute. Strict compliance with these requirements is mandatory." *Encova Mut. Ins. Grp. v. Kentucky Emps.' Mut. Ins.*, 724 S.W.3d 720, 735 (Ky. 2025) (citing *A.H. v. Louisville Metro Gov't*, 612 S.W.3d 902, 913 (Ky. 2020)). "Because the record does not establish compliance with KRS 418.075, any ruling on constitutional grounds would be void." *Id.* (citing *A.H.*, 612 S.W.3d at 913). Accordingly, our review of this issue is prohibited. *A.H.*, 612 S.W.3d at 913; *see also Benet v. Commonwealth*, 253 S.W.3d 528, 533 (Ky. 2008) (holding that "KRS 418.075 contains no exceptions for 'as applied' challenges[,]" and failure to strictly comply with the statutory provisions precludes appellate review).

### 3. Clear and Convincing Evidence

Birth Father's third argument is that the family court erred in finding sufficient grounds by clear and convincing evidence to terminate his parental rights. Our Supreme Court set forth the standard of review for this issue in *M.S.S. v. J.E.B.*, as follows:

> An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights. Parental rights are a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. As such, termination of parental rights is a grave action which the courts must conduct with utmost caution. So, to pass constitutional muster, the evidence supporting termination must be clear and convincing.

That said, trial courts are afforded a great deal of discretion in determining whether termination of parental rights is appropriate. A family court's termination of parental rights will be reversed only if it was clearly erroneous and not based upon clear and convincing evidence. Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people. Under this standard, we are obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them.

638 S.W.3d at 359-60 (internal quotation marks and citations omitted).

The statute provides that the family court shall enter a judgment of adoption if after a hearing, the court is satisfied that:

the facts stated in the petition were established; that all legal requirements, including jurisdiction, relating to the adoption have been complied with; that the petitioners are of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child; and that the best interest of the child will be promoted by the adoption and that the child is suitable for adoption.

*A.K.H. v. J.D.C.*, 619 S.W.3d 425, 429-30 (Ky. App. 2021) (citing KRS 199.520 (1)).

Further, an adoption may be granted if it is pleaded and proved that *any* of the nine conditions exist with respect to the child.[8] In fact, KRS 199.502

---

[8] KRS 199.502 provides in relevant part:

-14-

requires the court only to find that one of the subsections (a)-(i) is applicable. *B.L. v. J.S.*, 434 S.W.3d 61, 67 (Ky. App. 2014). Here, the family court found that three subsections applied, sections (a), (e), and (g).

(1) Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:
(a) That the parent has abandoned the child for a period of not less than ninety (90) days;
(b) That the parent had inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;
(c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than accidental means, physical injury or emotional harm;
(d) That the parent has been convicted of a felony that involved the infliction of serious physical injury to a child named in the present adoption proceeding;
(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
(f) That the parent has caused or allowed the child to be sexually abused or exploited;
(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;
(h) That:
1. The parent's parental rights to another child have been involuntarily terminated;
2. The child named in the present adoption proceeding was born subsequent to or during the pendency of the previous termination; and
3. The condition or factor which was the basis for the previous termination finding has not been corrected;
(i) That the parent has been convicted in a criminal proceeding of having caused or contributed to the death of another child as a result of physical or sexual abuse or neglect.

-15-

Addressing each of those subsections, the family court found first that Birth Father abandoned Child. Despite knowing that he was the biological father, he failed to claim paternity from April 2018 until December 2022. He testified that he was advised by counsel to establish his paternity or seek custodial rights prior to his criminal charges, but he did not do so. He testified that he last saw Child in April 2020 and did not make any attempt to formally establish visitation until June 2023. While he spent part of that time incarcerated for an admitted abuse to another child, he did not establish that he was precluded from any contact with Child since 2020.

We have held that incarceration alone cannot serve as the basis for terminating parental rights. *J.H. v. Cabinet for Human Resources*, 704 S.W.2d 661, 663 (Ky. App. 1985). Certainly, *if* the court's decision *to terminate* Birth Father's rights had been based *solely* on the fact of incarceration, it would be in error. However, it was not. *See A.F. v. L.B.*, 572 S.W.3d 64, 74 (Ky. App. 2019). Here, the family court noted that Birth Father had contacted Birth Mother only once from prison and once from home incarceration. He did not present any evidence in support of his claim of trying to keep any relationship with his son prior to the incarceration, nor afterwards. He simply testified that he was preoccupied with the "bad situation" he was in and that his lawyers had told him he would not succeed in pursuing any rights while those other charges were pending.

*See T.R.C. v. J.T.M.*, No. 2024-CA-0660-ME, 2024 WL 4863226, (Ky. App. Nov. 22, 2024) (affirming stepfather's adoption on grounds of abandonment where father made no attempt to use legal channels to gain access for several years); *see also C.M.C. v. P.K.R.*, No. 2023-CA-1075-ME, 2024 WL 3219136, (Ky. App. June 28, 2024) (also affirming stepfather's adoption on grounds of abandonment where father's attempts to initiate visitation were similarly limited and mother's prohibition of contact for a time was based on reasonable concerns).[9]

Considering Birth Father's actions from early 2020 until 2023, wherein he chose to engage in criminal conduct causing injury to another child that was not his own, and pleaded guilty to the same; failed to make contact with Child; and failed to take any legal action to establish any parental rights, there was sufficient evidence to support the finding of abandonment. "[A]bandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983) (citation omitted). Here, the evidence clearly supported the court's finding of abandonment.

Secondly, the family court found that Birth Father had failed to provide essential parental care and protection for Child. The evidence was undisputed that Birth Father had paid only approximately $200 to Birth Mother in

---

[9] Both these cases are nonpublished, and therefore non-binding. RAP 41.

the first two years of Child's life.  He testified that he is employed and earning $3,500 per month since his release from incarceration in 2023.  However, he produced evidence of only two receipts for purchases (appearing to have been made by his mother) of less than $200 in the three years prior to the hearing.  He still had never paid court ordered child support.  In contrast, Stepfather had financially supported Child for three years.

Birth Father defends his failure to render any financial support for Child by asserting that he was never ordered to do so.  This is no excuse.  *A.F. v. L.B.*, 572 S.W.3d 64, 75 (Ky. App. 2019).  "[P]arents not only have a universal and moral duty to support and maintain their minor children, but they also have a statutory duty.  KRS 405.020."  *Smothers v. Baptist Hospital East*, 468 S.W.3d 878, 883-84 (Ky. App. 2015) (quoting *Ciampa v. Ciampa*, 415 S.W.3d 97, 101 (Ky. App. 2013), *review denied* (Dec. 11, 2013)).

Finally, the family court found that Birth Father had failed to provide essential food, clothing, shelter, medical care, or education for a period of at least six months.  Despite his admitted knowledge since before birth that he was Child's father, and despite the adjudication of his paternity in May 2023, Birth Father has never provided food, clothing, shelter, medical care, or education for the Child.  He did not have any knowledge of Child's health, schooling, or activities or interests.

He had not seen the child since 2020. Child had no knowledge of Birth Father and believed Stepfather to be his dad.

The family court outlined all of the witnesses' testimony and specifically noted its assessment of their credibility. There was significant evidence of Birth Father's history of aggression and violence. The court noted its concern with Birth Father's failure to undergo mental health care; substance abuse; previous IPO entered to protect Birth Mother after child was born; guilty plea to criminal abuse of a child under age 12; and continued denial of responsibility for that child's documented injuries, despite his guilty plea. The court noted that all the testimony indicated that Stepfather and Child had a warm and loving relationship and that Stepfather was of good moral character, reputable standing in the community, and had already been able to provide for and educate Child. It specifically found that it was in the best interests of Child to terminate Birth Father's rights and to permit the adoption.

As our Supreme Court has directed, "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted); *see also* CR[10] 52.01. Given the deference we accord to the family court's judgments concerning the credibility of witnesses and the weight of the evidence,

---

[10] Kentucky Rule of Civil Procedure.

-19-

we cannot disturb its factual findings as they are supported by substantial evidence and, therefore, are not clearly erroneous. The family court found multiple grounds required by KRS 199.502(1). This evidence and the record as a whole clearly and convincingly support the family court's findings that Birth Father abandoned child for a period of not less than 90 days, and failed to provide essential care and protection and food, clothing, and shelter for a period of at least six months.

## CONCLUSION

The family court did not err in granting the petition for adoption and termination of Birth Father's parental rights to Child. Accordingly, we AFFIRM the judgment of the Boone County Family Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Carl E. Knochelmann, Jr.
Covington, Kentucky

BRIEF FOR APPELLEE T.A.G.:

Delana Sanders
Crescent Springs, Kentucky